Ed Chapin (CA SBN 53287)
echapin@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4253
Facsimile: (619) 577-4250

Kevin Sharp (TN SBN 016287, *Pro Hac Vice* forthcoming)
SANFORD HEISLER SHARP, LLP
611 Commerce St., Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7001
Facsimile: (615) 434-7020

Danielle Fuschetti (CA SBN 294064)
dfuschetti@sanfordheisler.com
SANFORD HEISLER SHARP, LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ehud Gersten and Hannah Obradovich, individuals, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EQUIFAX INC. <br><br> Defendant. | **CLASS ACTION**  '17CV1828 H    JMA <br><br> **COMPLAINT FOR DAMAGES** <br><br> Negligence <br> Negligence per se <br> Cal. Bus, & Prof. Code §17200 – Unlawful Business Practices <br> Cal. Bus, & Prof. Code §17200 – Unfair Business Practices <br> Cal. Bus, & Prof. Code §17200 – Fraudulent/Deceptive Business Practices <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Ehud Gersten and Hannah Obradovich (collectively, "Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated, file this Class Action complaint on behalf of roughly 143 million consumers across the United States harmed by Equifax's failure to adequately protect their credit and highly sensitive personal information, including but not limited to names, Social Security numbers, birth dates, addresses, and driver's license numbers. This complaint's allegations are based on personal knowledge as to Plaintiffs' conduct and is made on information and belief as to the acts of others.

## I. INTRODUCTION

1. Defendant Equifax Inc. ("Defendant," "Equifax," or the "Company") is one of the three largest consumer credit reporting agencies in the United States.

2. Plaintiff Gersten has been a consumer of Defendant Equifax's services and entrusted Defendant with his personal information since approximately 2001. Plaintiff Obradovich has been a consumer of Defendant Equifax's services and entrusted Defendant with her personal information since approximately 2003. They bring this action on a class basis alleging negligence, negligence per se, and violations of the California Unfair Competition Law, and seeking redress for affected Equifax consumers.

3. As Plaintiffs and the Class entrusted Defendant with their sensitive personal information, Equifax owed them a duty of care to take adequate measures to protect the information entrusted to it, and to inform Plaintiffs and the Class of data breaches that could expose them to harm. Equifax failed to do so.

4. Upon information and belief, between May 2017 and July 2017, Defendant was the subject of a data breach in which unauthorized individuals accessed Equifax's database and the names, Social Security numbers, addresses, and other Personal Identifying Information ("PII") stored therein (hereinafter the "Data Breach"). Equifax discovered the unauthorized access on July 29, 2017, but failed to alert Plaintiffs and the Class until September 7, 2017.

5. The Data Breach has already caused substantial injury. The potential for harm caused by insufficient safeguarding of PII is profound. With data such as that leaked in the Data Breach, identity thieves can cause irreparable and long-lasting damage to individuals, from filing for loans and opening fraudulent bank accounts to selling valuable PII to the highest bidder.

6. Equifax knew and should have known the risks associated with inadequate security, and with delayed reporting of the breach. Defendant knew and should have known of the inadequacy of its own data security. Equifax has experienced similar such breaches of PII on smaller scales in the past, including in 2013, 2016, and even as recently as January 2017. Over the years, Equifax has jeopardized the PII and, as a result, financial information of hundreds of thousands of Americans.

7. Yet, despite this long history of breaches, Defendant has failed to prevent the Data Breach that has, upon information and belief, exposed the personal information of over 100 million Americans. The damage done to these individuals may follow them for the rest of their lives, as they will have to monitor closely their financial accounts to detect any fraudulent activity and incur out-of-pocket expenses for years to protect themselves from identity theft now and in the future.

8. In the case of Defendant's Data Breach, the potential repercussions for consumers are particularly egregious. Privacy researchers and fraud analysts have called this attack "as bad as it gets." "On a scale of 1 to 10 in terms of risk to consumers," it is a 10.[1]

9. Defendant failed to inform millions of consumers of the Data Breach until September 7, 2017, over a month after Defendant first discovered it on July 29. While Defendant took no steps in that time to inform the public in the interim, Defendant did not hesitate to protect itself; at least three Equifax senior executives, including CFO John

---

[1] https://www.nytimes.com/2017/09/07/business/equifax-cyberattack.html

Gamble, upon information and belief, sold shares worth $1.8 million in the days following the Data Breach.[2]

10. To provide relief to the millions of people whose PII has been compromised by the Data Breach, Plaintiffs bring this action on behalf of themselves and all others similarly situated. They seek to recover actual and statutory damages, equitable relief, restitution, reimbursement of out-of-pocket losses, other compensatory damages, credit monitoring services with accompanying identity theft insurance, and injunctive relief including an order requiring Equifax to improve its data security and bring to an end its long history of breaches at the cost of consumers.

## II.  THE PARTIES

### A.  PLAINTIFF EHUD GERSTEN

11. Plaintiff Ehud Gersten is an individual consumer residing in San Diego, CA. Mr. Gersten first engaged, or authorized the engagement of, Equifax when he applied for credit in 2003. As a result, Equifax has had records of his entire financial history over the last 14 years, including his social security number, birthdate, and all personal addresses.

### B.  PLAINTIFF HANNAH OBRADOVICH

12. Plaintiff Hannah Obradovich is an individual consumer residing in San Diego, CA. Ms. Obradovich first engaged, or authorized the engagement of, Equifax when she applied for credit in approximately 2001. As a result, Equifax has had records of her entire financial history over the last 16 years, including her social security number, birthdate, and all personal addresses.

### C.  DEFENDANT EQUIFAX

13. Defendant Equifax Inc. is a multi-billion dollar corporation formed under the laws of the State of Delaware with its corporate headquarters at 1550 Peachtree Street NE, Atlanta, GA 30309. It provides credit information services to millions of businesses,

---

[2] https://www.bloomberg.com/news/articles/2017-09-07/three-equifax-executives-sold-stock-before-revealing-cyber-hack

governmental units, and consumers across the globe.  Equifax operated through various subsidiaries, each of which entities acted as agents of Equifax, or in the alternative, in concert with Equifax.

## III.  JURISDICTION AND VENUE

14.   This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $5 million exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed classes, on the one hand, and Defendant, on the other, are citizens of different states.

15.   The Southern District of California has personal jurisdiction over Defendant because Defendant does business in California and in this district; Defendant advertises in a variety of media throughout the United States, including California; and many of the acts complained of and giving rise to the claims alleged herein occurred in California in this district.  Defendant intentionally avails itself of the markets within this state to render the exercise of jurisdiction by this Court just and proper.

16.   Venue is proper pursuant to 28 U.S.C. Section 1391 because Defendants conduct substantial business in San Diego, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and a substantial part of property that is the subject of the action is situated.

## IV.  FACTUAL ALLEGATIONS

17.   Equifax has collected and stored personal and credit information from Class members, including Plaintiffs.

18.   Equifax owed a duty to Plaintiffs and the Classes, who entrusted Defendant with their private information, to use reasonable care to protect their PII from unauthorized access by third parties and to detect and stop data breaches, to comply with laws implemented to preserve the privacy of this information, and to notify them promptly if their information was disclosed to an unauthorized third party.

19. Equifax knew or should have known that its failure to meet this duty would cause substantial harm to Plaintiffs and the Classes, including serious risks of credit harm and identity theft for years to come.

20. Prior to May 2017, Equifax had experienced at least three major cybersecurity incidents in which consumers' personal information was compromised and accessed by unauthorized third parties. Given the company's prior history of cyberattacks and its reputation as an industry leader in data breach security, Equifax could have and should have invested more money and resources into ensuring the security of its data.

21. Beginning in mid-May 2017, because Equifax negligently failed to maintain adequate safeguards, unauthorized third parties managed to exploit a weakness in Equifax's US website application to gain access to sensitive data for roughly two months. Among the information stolen, the data breach jeopardized credit card numbers for approximately 209,000 consumers and documents with personal information used in disputes for approximately 182,000 consumers.

22. Equifax delayed informing Plaintiffs, the Class, and the public of the Data Breach. On September 7, 2017, Equifax announced to the public that the it had discovered "unauthorized access" to company data, which jeopardized sensitive information for millions of its consumers.

23. As of this date, Equifax has yet to disclose to consumers whether their specific personal data was impacted by this massive security breach. In fact, the dedicated website Equifax created to help consumers figure out if their information has been impacted only offers an enrollment date for its credit monitoring program.[3]

24. As a direct, proximate, and foreseeable result of Equifax's failure to meet its duty of care, including by failing to maintain adequate security measures and failing to provide adequate notice of the Data Breach, Plaintiffs and the class have suffered and will continue to suffer substantial injury, including inconvenience, distress, injury to their rights

---

[3] www.equifaxsecurity2017.com

to the privacy of their information, increased risk or fraud, identity theft, and financial harm, the costs of monitoring their credit to detect incidences of this, and other losses consistent with the access of their PII by unauthorized sources.

25. Armed with the stolen information, unauthorized third parties now possess keys that unlock consumers' medical histories, bank accounts, employee accounts, and more. Abuse of sensitive credit and personal information can result in considerable harm to victims of security breaches. Criminals can take out loans, mortgage property, open financial accounts and credit cards in a victim's name, obtain government benefits, file fraudulent tax returns, obtain medical services, and provide false information to police during an arrest, all under the victim's name. Furthermore, this valuable information can also be sold to others with similar nefarious intentions.

26. A breach of this scale requires Plaintiffs and class members to incur the burden of scrupulously monitoring their financial accounts and credit histories to protect themselves against identity theft and other fraud and will incur out-of-pocket expenses to protect against such theft. This includes obtaining credit reports, enrolling in credit monitoring services, freezing lines of credit, and more. Where identity theft is detected, Plaintiffs and Class members will incur the burden of correcting their financial records, to the extent that that is even possible. Plaintiffs and Class members will likely spend considerable effort and money for the rest of their lives on monitoring and responding to the repercussions of this cyberattack.

## V. CLASS ACTION ALLEGATIONS

27. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 seeking injunctive and monetary relief for Equifax's systemic failure to safeguard personal information of Plaintiffs and Class members.

### A. CLASS DEFINITIONS

28. Plaintiffs seek relief in their individual capacities and as representatives of all others who are similarly situated.

29. The "Nationwide Class" is defined as all persons residing in the United States whose personal data Equifax collected and stored and whose personal information was placed at risk and/or disclosed in the Data Breach affecting Equifax from May to July 2017.

30. The "California Class" is defined as all persons residing in California whose personal data Equifax collected and stored and whose personal information was placed at risk and/or disclosed in the Data Breach affecting Equifax from May to July 2017.

31. Excluded from either class are all attorneys for the class, officers, and members of Equifax, including officer and members of any entity with an ownership interest in Equifax, any judge who sits on this case, and all jurors and alternate jurors who sit on this case.

### B. REQUIREMENTS OF RULE 23(a) AND RULE 23(b)(2) and (b)(3)

#### i. Numerosity and Impracticability of Joinder

32. The proposed Classes are so numerous that joinder of all members is impracticable.

33. Upon information and belief, there are more than 143 million members of the proposed Nationwide Class, and tens of millions of members in the California Class.

34. The Class members are readily ascertainable. Equifax has access to addresses and personal contact information for millions of members of the Classes, which can be used for providing notice to Class members.

#### ii. Common Questions of Law and Fact

35. Every Class member suffered injuries as alleged in this complaint as a result of Defendant's negligence and unlawful, unfair, and deceptive/fraudulent behavior. The prosecution of Plaintiffs' claims will require the adjudication of numerous questions of law and fact common to the Classes. The common questions of law and fact predominate over any questions affecting only individual Class members. The common questions include:

    a. Whether Defendant engaged in the wrongful conduct alleged herein;

    b. Whether Defendant owed a duty to Plaintiffs and Class Members to adequately protect their personal information;

    c. Whether Defendant breached their duties to protect the personal information of Plaintiffs and Class members;

    d. Whether Defendant knew or should have known that their data security systems and processes were unreasonably vulnerable to attack;

    e. Whether Plaintiffs and Class members suffered legally cognizable damages as a result of Defendant's conduct, including increased risk of identity theft and loss of value of personal information; and

    f. Whether Plaintiffs and Class members are entitled to equitable relief including injunctive relief.

    **iii. Typicality of Claims and Relief Sought**

36. Plaintiffs have suffered the same violations and similar injuries as other Class members arising out of and caused by Defendant's common course of conduct. All Class members were subject to the same acts and omissions by Defendant, as alleged herein, resulting in the breach of personal information.

37. Plaintiffs possess and assert each of the claims they assert on behalf of the proposed Classes. They seek similar relief as other Class members.

    **iv. Adequacy of Representation**

38. Plaintiffs' interests are coextensive with those of the members of the proposed Classes. Each suffered risk of loss and credit harm and identity theft caused by Equifax's wrongful conduct and negligent failure to safeguard their data, the injuries suffered by Plaintiffs and the Class members are identical (i.e. the costs to monitor and repair their credit through a third-party service), and Plaintiffs' claims for relief are based upon the same legal theories as are the claims of the other Class members. Plaintiffs are willing and able to represent the proposed Classes fairly and vigorously.

39. Plaintiffs have retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.

### v. Efficiency of Class Prosecution of Class Claims

40. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly where individual class members lack the financial resources to vigorously prosecute a lawsuit against a large corporation such as Equifax.

41. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

42. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Classes, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

43. The issues in this class action can be decided by means of common, classwide proof. In addition, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

### C. Requirements of Rule 23(b)(2)

44. Equifax has acted or refused to act on grounds generally applicable to Plaintiffs and the proposed Classes by failing to take necessary steps to safeguard Plaintiffs' and Class members' personal information.

45. Equifax's systemic conduct justifies the requested injunctive and declaratory relief with respect to the Classes.

46. Injunctive, declaratory, and affirmative relief are predominant forms of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of Equifax's failure to safeguard consumers' personal information. In turn, entitlement to declaratory, injunctive, and affirmative relief forms the

factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Equifax's failure to secure such information.

### D. Rule 23(c)(4) Issue Certification

47. Additionally, or in the alternative, the Court may grant "partial" or "issue" certification under Rule 23(c)(4). Resolution of common questions of fact and law would materially advance the litigation for all Class members.

## VI. COUNTS

### COUNT I
### NEGLIGENCE
### (On Behalf of Nationwide and California Classes)

48. Plaintiffs incorporate all preceding and subsequent paragraphs by reference.

49. Equifax owed a duty to Plaintiffs and Class Members to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, maintaining, monitoring, and testing Equifax's security systems, protocols, and practices to ensure that Class Members' information adequately secured from unauthorized access.

50. Equifax owed a duty to Class Members to implement intrusion detection processes that would detect a data breach in a timely manner.

51. Equifax also had a duty to delete any PII that was no longer needed to serve client needs.

52. Equifax owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Class Member's PII.

53. Equifax also had independent duties under state laws that required Equifax to reasonably safeguard Plaintiffs' and Class Members' PII and promptly notify them about the Data Breach.

54. Equifax had a special relationship with Plaintiffs and Class Members from being entrusted with their PII, which provided an independent duty of care. Moreover, Equifax had the ability to protect its systems and the PII it stored on them from attack.

55. Equifax breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Class Member's PII; (b) failing to detect and end the Data Breach in a timely manner; (c) failing to disclose that Defendant's data security practices were inadequate to safeguard Class Member's PII; and (d) failing to provide adequate and timely notice of the breach.

56. But for Equifax's breach of its duties, Class Member's PII would not have been accessed by unauthorized individuals.

57. Plaintiffs and Class Members were foreseeable victims of Equifax's inadequate data security practices. Equifax knew or should have known that a breach of its data security systems would cause damages to Class Members.

58. As a result of Equifax's negligence, Plaintiffs and Class Members suffered and will continue to suffer injury, which includes but is not limited to inconvenience and exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class Members must more closely monitor their financial accounts and credit histories to guard against identity theft. Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Member's PII has also diminished the value of the PII. Through its failure to timely discover and provide clear notification of the Data Breach to consumers, Equifax prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII.

59. The damages to Plaintiffs and the Class Members were a direct, proximate, reasonably foreseeable result of Equifax's breaches of its duties.

60. Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

# COUNT II

## NEGLIGENCE PER SE

### (On behalf of the Nationwide and California Classes)

61. Plaintiffs incorporate all preceding and subsequent paragraphs by reference.

62. Because Equifax was aware of a breach of its security system (that was reasonably likely to have caused unauthorized persons to acquire Plaintiffs' and California Subclass Member's PII), Equifax had an obligation to disclose the Data Breach in a timely and accurate fashion. Defendant's failure to maintain adequate security of this computerized PII, the resulting Data Breach, and Defendant's failure to promptly disclose the fact of the Data Breach violates California law, including the California Financial Information Privacy Act, Cal. Fin. Code § 4050 et seq. and/or the California Customer Records Act, Cal. Civ. Code § 1798.80, et seq. *See also e.g.* Cal. Civ. Code § 1798.82(a-b). Defendant's failure to comply with these applicable laws and regulations, constitutes negligence per se.

63. But for Equifax's violation of the applicable laws and regulations, Class Members' PII would not have been accessed by unauthorized individuals.

64. As a result of Equifax's failure to comply with applicable laws and regulations, Plaintiffs and Class Members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class Members must more closely monitor their financial accounts and credit histories to guard against identity theft. Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of the PII.

65. The damages to Plaintiffs and the Class Members were a proximate, reasonably foreseeable result of Equifax's breaches of it's the applicable laws and regulations.

66. Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

# COUNT III

# VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW – BUSINESS & PROFESSIONS CODE §17200 – UNLAWFUL BUSINESS PRACTICES

### (On Behalf of the Nationwide and California Classes)

67. Plaintiffs incorporate all preceding and subsequent paragraphs by reference.

68. Equifax has violated California law, including the California Financial Information Privacy Act, Cal. Fin. Code § 4050 et seq. and/or the California Customer Records Act, Cal. Civ. Code § 1798.80, et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code §17200.

69. Equifax engaged in unlawful acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Nationwide and California Class Members' Private Information with knowledge that the information would not be adequately protected; and by storing Plaintiff's and Nationwide and California Members' Private Information in an unsecure electronic environment in violation of California's data breach laws.

70. In addition, Equifax engaged in unlawful acts and practices with respect to the its services by failing to discover and then disclose the Data Breach to Nationwide and California Members in a timely and accurate manner. To date, Equifax has still not provided such sufficient information to Plaintiff and the Nationwide and California Members.

71. As a direct and proximate result of Equifax's unlawful practices and acts, Plaintiff and the Nationwide and California Members were injured and lost money or property, including but not limited to the price received by Equifax for its services, the loss

of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

72. Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard Nationwide and California Members' Private Information and that the risk of a data breach or theft was highly likely.

73. Equifax's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Nationwide and California.

74. Nationwide and California Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq., including, but not limited to, restitution to Plaintiff and Nationwide and California Class Members of money or property that Equifax may have acquired by means of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Equifax because of its unlawful and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## COUNT IV
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW – BUSINESS & PROFESSIONS CODE §17200 – UNFAIR BUSINESS PRACTICES
### (On Behalf of the Nationwide and California Classes)

75. Plaintiffs incorporate all preceding and subsequent paragraphs by reference.

76. Equifax has violated Cal. Bus. and Prof. Code §17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code §17200.

77. Equifax engaged in unfair acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and Nationwide and California Class Members' Private Information with knowledge that the information would not be adequately protected; and

by storing Plaintiffs' and Nationwide and California Class Members' Private Information in an unsecure electronic environment in violation of California's data breach laws.

78. In addition, Equifax engaged in unfair acts and practices with respect to its services by failing to discover and then disclose the Data Breach to Nationwide and California Class Members in a timely and accurate manner, and by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiffs' and Nationwide and California Class Members' Private Information from further unauthorized disclosure, release, data breaches, and theft.

79. As a direct and proximate result of Equifax's unfair practices and acts, Plaintiffs and the Nationwide and California Members were injured and lost money or property, including but not limited to the price received by Equifax for its services, the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

80. Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard Nationwide and California Members' Private Information and that the risk of a data breach or theft was highly likely.

81. Equifax's actions in engaging in the above-named unfair practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Nationwide and California.

82. Plaintiffs and Nationwide and California Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq., including, but not limited to, restitution to Plaintiffs and Nationwide and California Class Members of money or property that Equifax may have acquired by means of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Equifax because of its unlawful and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

# COUNT V

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW – BUSINESS & PROFESSIONS CODE §17200 – FRAUDULENT/DECEPTIVE BUSINESS PRACTICES

### (On Behalf of the Nationwide and California Classes)

83. Plaintiffs incorporate all preceding and subsequent paragraphs by reference.

84. Equifax engaged in fraudulent and deceptive acts and practices with regard to the services provided to Plaintiffs and the Nationwide and California Class Members by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiffs' and Nationwide and California Class Members' Private Information from unauthorized disclosure, release, data breaches, and theft; and representing and advertising that it did and would comply with the requirements of relevant laws pertaining to the privacy and security of Nationwide and California s Members' Private Information. These representations were likely to deceive members of the public, including Plaintiffs and the Nationwide and California Class Members, into believing their Private Information was securely stored, when it was not, and that Equifax was complying with relevant law, when it was not.

85. Equifax engaged in fraudulent and deceptive acts and practices with regard to the services provided to the Nationwide and California Class by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Nationwide and California Class Members' Private Information, as well as the fact of the Data Breach.  At the time that Nationwide and California Class members were using Equifax services, Equifax failed to disclose to Nationwide and California Class Members that its data security systems failed to meet legal and industry standards for the protection of their Private Information.  Plaintiffs would not have selected Equifax to its services if they had known about its substandard data security practices.  These representations were likely to deceive members of the public, including Plaintiffs and the Nationwide and California Class Members, into believing their Private Information was securely stored,

when it was not, and that Equifax was complying with relevant law and industry standards, when it was not.

93. As a direct and proximate result of Equifax's deceptive practices and acts, Plaintiffs and the Class Members who used Equifax's services were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

94. Equifax knew or should have known that its computer systems and data security practices were inadequate to safeguard Nationwide and California Members' Private Information and that the risk of a data breach or theft was highly likely, and that its failure to notify Class members of the theft of their data would cause Class members to sustain the further injury. Equifax's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and members of the Nationwide and California Classes.

95. Plaintiffs and Nationwide and California Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq., including, but not limited to, restitution to Plaintiffs and Nationwide and California Members of money or property that the Equifax may have acquired by means of its fraudulent and deceptive business practices, restitutionary disgorgement of all profits accruing to Equifax because of its fraudulent and deceptive business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## VII. PRAYER FOR RELIEF ON INDIVIDUAL AND CLASS ACTION CLAIMS

WHEREFORE, the Plaintiffs and Class Representatives, on their own behalf and on behalf of the respective Classes, pray that this Court:

96. Certify this case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed Classes; designate the proposed Class Representatives as a representatives; and designate Plaintiffs' counsel of record as Class Counsel for each Class;

97. Declare and adjudge that Defendants' policies, practices, and/or procedures challenged herein are illegal and in violation of the rights of the respective Plaintiffs, Class Representative, and members of the Nationwide and California Classes.

98. Issue a permanent injunction against Defendant and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives, and any and all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiffs, Class Representative, members of the Nationwide and California Classes, and those similarly situated as secured by law.

99. Order injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain PII to comply with the applicable state laws alleged herein and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendant's systems on a periodic basis; (3) promptly correct any problems or issues detected by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

100. Award compensatory, consequential, incidental, and statutory damages, restitution, and disgorgement to Plaintiffs, Class Representative, and members of the Classes, in an amount to be determined at trial.

101. Order Defendant to make whole the Plaintiffs, Class Representative, and members of the Classes by providing them with any other monetary and affirmative relief;

102. Order Defendant to pay all costs associated with Class notice and administration of Class-wide relief;

103. Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to the Plaintiffs, Class Representative, and members of the Nationwide and California Classes;

104. Award Plaintiffs, Class Representative, and members of the Nationwide and California Classes all pre-judgment interest and post-judgment interest available under law;

105. Award Plaintiffs, Class Representative, and members of the Nationwide and California Classes any other appropriate equitable relief;

106. Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that the Defendant has remedied the practices complained of herein and are determined to be in full compliance with the law; and

107. Award additional and further relief as this Court may deem just and proper.

## VIII. JURY DEMANDED

Plaintiffs demand a trial by jury on all issues triable of right by jury.

/s/ Ed Chapin
Ed Chapin (SBN 53287)
Kevin Sharp (*Pro Hac Vice* forthcoming)
Danielle Fuschetti (SBN 294064)
SANFORD HEISLER SHARP, LLP

*Attorneys for Plaintiffs and the Classes*